UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Zoran Nikolovski and Aleksandra Kirovska )
individually, and Zoran Nikolovski as )
Administrator, )
                               )
        Plaintiffs, )
                               )         No. 22-cv-6741
        v. )
                               )        Judge April M. Perry
Costco Travel, a division of Costco Wholesale )
Membership, Inc., )
                               )
        Defendant. )

## OPINION AND ORDER

Before the Court is a third motion to dismiss filed by Defendant Costco Travel, a division of Costco Wholesale Membership, Inc. ("Costco"). Doc. 89. The Court granted Costco's second motion to dismiss, finding that the complaint did not plausibly allege that Costco proximately caused injury to Plaintiffs. Doc. 87. The third amended complaint suffers from many of the same problems, and the Court again concludes that dismissal is appropriate for the reasons that follow.

## BACKGROUND

The below facts are drawn from allegations in Plaintiffs' third amended complaint, Doc. 88, which the Court accepts as true, drawing all reasonable inferences in Plaintiffs' favor. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

Costco is a domestic corporation that operates wholesale stores and offers various benefits to its members. Among those benefits is the ability to utilize Costco's services as a travel agency. Through Costco's travel website, members can book vacations for discounted prices at Costco's preferred resorts, which it advertises as among the world's top hotels, "ready for business" and offering "quality vacation experience[s]." Doc. 88 ¶¶ 18, 115. On November

17, 2020, Costco posted an announcement on its travel blog titled "Hotel Partners Safety

Pledge." That post stated:

> COVID-19 has had a detrimental effect on just about every
> industry, and the hotel industry was hit particularly hard. Shelter-
> at-home orders, quarantines, and other restrictions furthered the
> narrative against non-essential travel. Masks are now mandatory in
> many places. But have hotel practices changed in response to these
> concerns? And the biggest question, is it safe to travel? Here are
> the ways that some of our notable hotel brands are pledging to
> keep your hotel stay clean and safe so you can enjoy stress-free
> travel again.

Doc. 88 ¶ 19. Another portion of the post stated:

> Once You Are Ready to Travel Again, Costco Travel Can Help
>
> In a year filled with many uncertainties, these newly implemented
> changes will give you one less thing to stress over. Now, you can
> begin dreaming of your next vacation and book with more peace of
> mind.

*Id.* Another post on Costco's travel website in December 2019 stated that "When you shop at

your local Costco, you know the items you are purchasing have quality and value; if they didn't,

the warehouse wouldn't be offering them. We use that same model with the products we offer at

Costco Travel. If we are not able to find a value to pass on to our members, we are not going to

be offering it as a travel option." Doc. 88 ¶ 28.

In November 2020, Plaintiffs owned a Costco membership and used that membership to

book a trip through Costco to the Royalton Hotel Antigua ("RHA"). Plaintiffs allege they

decided to take the trip based on information from Costco's website and past vacation

experiences booked through Costco. Specifically, Plaintiffs allege that they relied upon Costco's

descriptions of RHA: That it was "family-friendly," had "exceptional service," was rated 3.7

stars out of 5 according to "Costco Member Reviews" and received a "Costco Star Rating" of "4

Star Hotel," which according to Costco means that the hotel has "upscale design and décor" and

"a high level of service and hospitality." Doc. 88 ¶ 29–31. Plaintiffs allege that at the time of booking they relied on this rating system as an accurate representation of what to expect at RHA.

Plaintiffs also allege, on information and belief, that the generally positive member ratings on Costco's website were the result of Costco "deliberately sanitize[ing] pre-incident member reviews." *Id.* ¶ 32. Plaintiffs allege that on other travel websites, RHA had overwhelmingly negative reviews when compared to the reviews on Costco's website. *Id.* RHA first opened in May 2019 but as a result of the Covid-19 pandemic closed for several months starting in March 2020. Plaintiffs include in their complaint several one-star guest reviews from other travel websites spanning this opening period. The one-star reviews from May 2019 describe RHA as "terrible" and "the worst hotel experience ive [sic] ever had" and state that the reviewers were "hoodwinked." *Id.* ¶ 83. One-star reviews from June 2019 state, for example, that management "doesn't care about your stay" and that the "staff is unfriendly and not trained to give service at all." *Id.* Other complaints, especially those criticizing RHA's management and service, continued through March 2020, just prior to the hotel's shutdown due to Covid-19. In these reviews, guests complained about long waits for amenities, poor cleaning service, leaky plumbing, bugs and rats, rude staff, food poisoning, and safety concerns involving staff threats and thefts. *Id.* Four reviews included in the complaint mentioned problems with the pool. The first stated:

> Pool area can only be described as an Antiguan club 18 to 30. Rowdy, boozy, and noisy. Some guests getting very drunk and behaving badly next to young children in the pool (yelling and chanting and exposing themselves whilst a wedding was going on just a couple of feet away) management did nothing despite requests from various other guests. I don't want to sunbathe near someone throwing up on the beach. Their [sic] is no separate quiet pool area."

*Id.*

Two other reviews complained about "sex acts in the pool." *Id.* A fourth review said: "Pool – small, ugly, and very noisy (think club 18 – 30 vibe)." *Id.* RHA closed in March 2020 due to Covid-19 and reopened on November 29, 2020. Around that time, Plaintiffs allege that RHA had negative guest reviews both on Costco's website and elsewhere. The non-Costco reviews included complaints about lack of amenities and poor customer service. Doc. 88 ¶ 89. The Costcotravel.com reviews included in the complaint were all posted after Plaintiffs' stay, and therefore the Court considers them irrelevant as to the issue of Costco's notice at the time of Plaintiffs' trip. *Id.*[1]

Plaintiffs went on their vacation as planned in December, bringing their two children, daughters I.N. and V.N. When Plaintiffs arrived at RHA, they noticed "slow service, lack of adequate personnel," and a "general lack of readiness by RHA," and believe that other guests were similarly dissatisfied with RHA's slow service and understaffing. *Id.* ¶ 37. The second day of their vacation, the family went to the beach adjacent to the resort. V.N. and I.N. spent the morning going back and forth between the beach where Plaintiffs remained and the pool area about twenty-five yards away. According to the complaint, both V.N. and I.N. were competent swimmers and did not require the use of flotation devices.

Just before 11:00 a.m., V.N. and I.N. were in the jet tub in the pool area. There were eight to ten other children swimming in the jet tub, which was about three feet deep. I.N. stood more than four feet tall. Plaintiffs allege there were no lifeguards patrolling or otherwise scanning the

---

[1] At the Court's request, Plaintiffs have clarified that the undated reviews in paragraphs 91 and 92 of the third amended complaint – one of which is quoted in paragraph 69 – post-dated Plaintiffs' stay at RHA, and at least one was posted by a customer who was at RHA at the time of I.N.'s death. Doc. 97. The timing of these reviews matters, because in paragraph 90, Plaintiffs allege that "Costco Travel was again made aware, or reasonably should have been aware, that RHA lacked safety procedures, lacked safety protocols, and lacked general safety and operational ability needed to keep Costco Travel's members reasonably safe." Doc. 88. As the Court already instructed, reviews posted after and because of I.N.'s death are not relevant to what Costco knew or should have known prior to I.N.'s death, and should not be relied on by Plaintiffs for their general allegations of Costco's knowledge. Doc. 87 at 10.

pool area, and no signs to indicate that there was no lifeguard on duty. V.N. left the jet tub to get drinks at the poolside restaurant while I.N. stayed in the jet tub. While V.N. was away, Plaintiffs allege on information and belief that "I.N. was in the jet tub and . . . was struck in the head." *Id.* ¶ 45. She then "became unresponsive underwater and no lifeguards were in the area to either witness the event or identify a person underwater in the jet tub." *Id.* A woman in the area of the jet tub noticed I.N. floating unresponsive and removed her, then began screaming for help. Plaintiffs heard the screaming and made their way to the scene. V.N. also returned and other guests gathered, one of whom was a physician. The physician-guest assessed I.N. and asked for a defibrillator. A nurse-employee of RHA responded that she would retrieve a defibrillator and left the scene but never returned. Plaintiffs allege they later learned that when the nurse went to retrieve the defibrillator, she could not access it because it was in a locked room. While the physician-guest was attempting to revive I.N., several minutes after lifesaving measures had begun, a lifeguard-employee of RHA appeared to assist. Their efforts continued until an ambulance arrived approximately 30 minutes later. In the ambulance, emergency medical personnel attempted to revive I.N. but were unsuccessful. I.N. was pronounced dead at the hospital. Her cause of death was acute respiratory failure with pulmonary edema indicated as a contributing cause from drowning.

Plaintiffs allege that throughout I.N.'s unresponsiveness, RHA seemed to have no protocol in place for handling emergencies. Plaintiffs further allege that Costco should have known RHA was not fully operational in 2020 when Costco was representing it as a four-star hotel, and that Costco "was in a better position to learn, and should have learned, of RHA's safety failings even without online reviews." *Id.* ¶ 94.

On December 1, 2022, Plaintiffs filed suit against Costco and several other hospitality entities. Doc. 1. The Court subsequently dismissed all defendants but Costco for lack of personal jurisdiction. Doc. 67. The remaining counts against Costco as alleged in Plaintiffs' second amended complaint consisted of a negligence claim under the Illinois Wrongful Death Act, 740 ILCS 180/1, a negligence claim under the Illinois Survival Act, 755 ILCS 5/27-6, a negligent misrepresentation claim, a negligent selection and retention claim, and a claim for violations of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2, (the "ICFDTPA"). In April 2025, the Court dismissed Plaintiffs' second amended complaint without prejudice. Doc. 86. On June 6, 2025, Plaintiffs filed a third amended complaint alleging the same causes of action as the second amended complaint. Doc. 88. Costco again moved to dismiss. Doc. 89.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Put differently, factual "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### ANALYSIS

Plaintiffs argue that Costo is liable for the death of I.N. because Costco had constructive or actual knowledge that RHA was unsafe but continued to work with and advertise RHA. In so doing, Plaintiffs argue Costco breached a duty of care by marketing, advertising and selling a product it knew or should have known was dangerous. Plaintiffs also argue that Costco's advertising activities were deceptive. Costco responds with several arguments, first and foremost that Plaintiffs have failed to adequately allege proximate cause.

Proximate cause is an essential element of each of Plaintiffs' claims. *See Vertin v. Mau*, 8 N.E.3d 658, 661 (Ill. App. Ct. 2014) ("Proximate cause is an essential element of a negligence claim that, if not proved, will prevent the plaintiff from establishing a *prima facie* case."); *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1033 (Ill. App. Ct. 2014) (affirming dismissal of negligent misrepresentation claim in part for failure to adequately allege proximate cause); *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998) (requiring proof that "particular unfitness" of chosen agent or employee "proximately caused the plaintiff's injury" in negligent selection case); *Joseph v. Lowe's Home Centers, LLC*, No. 14 C 3866, 2015 WL 2375191, at *2 (N.D. Ill. May 14, 2015) ("To state a claim under the [ICFDTPA], a plaintiff must allege that: (1) the defendant engaged in a deceptive act or practice; … and (4) the deception was the proximate cause of the claimant's alleged injury.").

Proximate cause consists of two elements. The first is "cause in fact," which exists if there is "a reasonable certainty that a defendant's acts caused the injury or damage" for which a plaintiff seeks redress. *Lee v. Chicago Transit Auth.*, 605 N.E.2d 493, 502 (Ill. 1992). In determining whether cause in fact exists, Illinois courts ask whether a plaintiff's "injury would have occurred absent the defendant's conduct." *City of Chicago v. Beretta U.S.A. Corp.*, 821

N.E.2d 1099, 1127 (Ill. 2004). "In addition, when … there are multiple factors that may have combined to cause the injury, we ask whether defendant's conduct was a material element and substantial factor in bringing about the injury." *Id*. The second element is "legal cause," which exists when the defendant's wrongful conduct is "so closely tied to the plaintiff's injury that he should be held legally responsible for it." *Id*. This element asks the Court to assess "whether the injury is of a type that a reasonable person would see as a likely result of his conduct." *Id.*; *see also Phillips*, 19 N.E.3d at 1033–34 (articulating proximate cause in a consumer fraud and negligent misrepresentation case similarly). "Although proximate cause is generally a question of fact, the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause." *Beretta*, 821 N.E.2d at 1127–28 (internal citation omitted).

This brings us to intervening causes. Where injury results "not from the defendant's negligence directly but from the subsequent, independent act of a third person . . . the [proximate cause] test is 'whether the first wrongdoer reasonably might have anticipated the intervening efficient cause as a natural and probable result of the first party's own negligence.'" *Abrams v. City of Chicago*, 811 N.E.2d 670, 675 (Ill. 2004); *Schultz v. St. Clair Cnty.*, 201 N.E.3d 1111, 1119 (Ill. 2022) (affirming dismissal on proximate cause basis and acknowledging Illinois Supreme Court's position that "there is a subset of proximate cause cases that distinguish between a condition and causation"). "If the negligence charged does nothing more than furnish a condition by the which [sic] the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *Abrams*, 811 N.E.2d at 675; *Briske v. Vill. of Burnham*, 39

N.E.2d 976, 979 (Ill. 1942) ("The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act.").

Here, the Court concludes that Costco's conduct was not the proximate cause of I.N.'s death. Taking the well-pled facts and drawing all reasonable inferences in Plaintiff's favor, Costco falsely advertised RHA as a high-quality, family-friendly resort that was prepared to reopen safely after the Covid-19 pandemic when in fact it was low-quality, lacking in amenities, had poor customer-service, poor management, and drunken customers engaging in sex acts in the pool. But none of these conditions could reasonably be said to constitute a "material element" or "substantial factor" in bringing about I.N.'s injury. Rather, as alleged, I.N.'s injury came about after I.N. "was struck in the head while a large number of children were in the jet tub." Doc. 88 ¶ 45. Costco's conduct may have been the reason I.N. was at RHA, but it was the subsequent, independent act of the unknown third party who struck I.N. in the head that directly caused I.N.'s subsequent drowning. Costco's alleged negligence in advertising RHA as ready to open did nothing more than provide a location where the independent act of the third party who struck I.N. could take place. *See Thompson v. County of Cook*, 609 N.E.2d 290 (Ill. 1993) (holding that defendant's failure to construct warning signs near tight curve on a highway where traffic accident occurred merely provided location for negligence of drunk driver).

The Court also notes that despite the many reviews included in the complaint pre-dating I.N.'s injury, none comment on RHA's lack of lifeguards at the pool, failures of medical equipment or medical personnel, or pool safety, such that Costco could have reasonably foreseen that if a child was stuck in the head and knocked into the pool, no one at RHA would have responded quickly enough to save her.[2] As the reviews for RHA demonstrate, resorts can be

---

[2] The Court assumes for the purposes of this motion to dismiss that a quick lifeguard response or the availability of RHA medical equipment or personnel could have saved I.N.'s life.

lacking in numerous ways, but improper food preparation, pests, or thefts were not the cause of Plaintiffs' injuries, and it is not a reasonable inference that those types of problems correspond with a lack of lifeguards. Plaintiffs acknowledge that there were RHA lifeguards on duty at the beach, Doc. 88 ¶ 51, they just were not at the pool at the time I.N. was injured. Whether this was a longstanding issue at RHA or a momentary one, the complaint does not say. But even if it is a reasonable inference that this was a longstanding problem, there is nothing alleged in the complaint that would make that fact reasonably foreseeable to Costco.[3] Given the number of things that went wrong in between Costco's actions and I.N.'s death, the Court simply cannot find that Costco was the proximate cause of I.N.'s injuries, under even the most generous interpretation of the facts.

The parties have not cited, and the Court has not found, any Illinois case in which a travel agent or booking company was held liable for the negligence of a third-party hotel. Cases from other jurisdictions generally do not find liability in similar circumstances. *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 176 (D. Mass. 2007) ("It is well-established that travel agents are not generally liable for the negligence or dangerous conditions of third-party hotel or travel operators.") (collecting cases from several jurisdictions); *Ross v. Trans Nat. Travel*, No. CIV. A. 88-1763-Z, 1990 WL 79229, at *3 (D. Mass. June 5, 1990) (same). While Plaintiffs cite a few cases reaching the opposite conclusion, those cases involve a more direct nexus between the travel agent's misconduct and the plaintiff's injury. For example, in *Giampietro*, the plaintiffs booked a

---

[3] Illinois courts hold that travel agents do not have a duty to investigate conditions at the properties they recommend – only a duty to disclose information they already know. *United Airlines, Inc. v. Lerner*, 410 N.E.2d 225, 228 (Ill. App. Ct. 1980) (holding that travel agent owed a duty to "disclose all information the agent learns which is material to the object of the agency" but neither a duty to investigate nor to "inform its clients of potential dangers ahead"); *see also Semmelroth v. Am. Airlines*, 448 F. Supp. 730, 733 (E.D. Ill. 1978) (finding that corporation who invited travel agent to visit its accommodations in Mexico did not have a duty to warn the travel-agent guest of dangerous guerilla activity in the country because such liability would "make the promoters of travel insurers for the health and safety of all travelers").

vacation and vespa tour through defendant on defendant's recommendation. *Giampietro v. Viator, Inc.*, 140 F. Supp. 3d 366, 368 (E.D. Pa. 2015). Defendant specifically advertised the vespa tour as including no more than ten people, involving travel on quiet scenic roads, and beginning with a thirty-minute safety orientation. *Id.* Plaintiffs were subsequently injured during the vespa tour, which in fact involved about twenty people, travel on mainly busy roads with heavy traffic, a ten-minute orientation, and vespas that repeatedly stalled. *Id.* Similarly, in *Lang v. Corporacion De Hoteles,* 522 F. Supp. 2d 349 (D.P.R. 2007), the tour company sold plaintiffs a vacation package which included a golf cart, knowing that the golf carts at the resort were used on the same roads as regular vehicles, assured the plaintiffs of a "safe, healthy, and protected environment" during their vacation, but plaintiffs were injured when struck by a truck while in the golf cart. Neither of these cases is binding on the Court, and the Court finds them distinguishable on their facts and unpersuasive.

The Court notes that the proximate cause analysis in intervening-cause cases does not require the defendant's conduct to have been perfect. *See, e.g.*, *Schultz*, 201 N.E.3d 1111, 1120 (defendants not liable for failing to dispatch police in response to multiple 911 calls regarding a drunk driver); *Abrams*, 811 N.E.2d at 677 (City of Chicago could not be liable for traffic accident suffered after it refused to send an ambulance for a woman in labor whose driver ran a red light going to the hospital); *Thompson*, 609 N.E.2d 290 (holding defendant could not be liable for failure to construct warning signs near tight curve on a highway). Thus, even accepting as true Plaintiffs' assertion that Costco deliberately sanitized the reviews on its website so as to leave members with an unrealistically positive impression of RHA, the natural and *probable* consequence of such conduct is not the death of a minor child in a tragic accident brought on by that child being struck in the head while unsupervised in a jet tub. Having found that proximate

cause is not adequately pled for the second time, the Court dismisses Plaintiffs' complaint with prejudice.

In addition to the above, there are several other reasons why Plaintiffs' negligent misrepresentation claim must be dismissed. First, the statements Plaintiffs rely on as alleged misrepresentations, for example, Costco's rating of RHA as a four-star resort with quality and value, consist of opinions not actionable under Illinois law. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007) (statements of opinion related to the "degree of quality" of one's product are not actionable misrepresentations under Illinois law). That Costco offered descriptions for its star rating system does not make Costco's ratings objective given that the descriptions themselves were opinions related to the quality of Costco's travel products.[4]

Moreover, Plaintiffs have failed to adequately allege reasonable reliance. By the second day of their vacation, Plaintiffs allegedly had discovered RHA's "lack of adequate personnel" and "general lack of readiness." Doc. 88 ¶ 37. They were also able to see whether or not there was a lifeguard in the pool area, whether the pool area was overcrowded, and whether the guests were out of control before allowing their minor child to swim there unattended. If the pool area was so dangerous that Costco should have been able to ferret it out from a different country, it is inconceivable that Plaintiffs who were present at the resort would not have had the same knowledge. Therefore, to the extent RHA's unpreparedness and lack of supervision contributed to I.N.'s death, Plaintiffs were at the time of I.N.'s injury in a better position than Costco to assess the safety of the environment. *See Kopley Grp. V., L.P. v. Sheridan Edgewater Props.*, 876 N.E.2d 218, 229 (Ill. App. Ct. 2007) (explaining that reliance will not be considered

---

[4] Plaintiffs also rely on safety-related excerpts from the Hotel Partners Safety Pledge. The context of this post makes clear that it is about Covid-19 safety practices only, and nothing about the course of events leading to I.N.s death suggests it was the result of insufficient Covid-19- precautions.

reasonable where plaintiff had ample opportunity to discover the truth). For these additional reasons, Plaintiffs' negligent misrepresentation claim is dismissed.

Finally, Plaintiffs' negligent selection and retention claim is dismissed because Plaintiffs do not plausibly allege, as required to sustain a negligent selection and retention claim, that Costco was in an agency or hiring relationship with RHA. *See Crouch v. Taylor Logistics Co.*, 563 F. Supp. 3d 868, 878 (S.D. Ill. 2021). Plaintiffs do not allege that Costco hired RHA and cannot rely on the legal conclusion that RHA was an agent of Costco; the Court has already separately ruled that there was no agency relationship between Costco and RHA. Doc. 67 at 7–8.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims are dismissed. As Plaintiffs have previously had the opportunity to amend the complaint after the Court noted these same issues [87], the dismissal is with prejudice.

Dated: October 15, 2025

_____
APRIL M. PERRY
United States District Judge